IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOMINION TRANSMISSION, INC.

    Plaintiff,

v.                                         Civil Action No. RDB-13-0338

TOWN OF MYERSVILLE TOWN
COUNCIL, et al.

    Defendant.

## MEMORANDUM OPINION

Plaintiff Dominion Transmission, Inc. ("Dominion") has brought this action seeking a declaratory judgment and injunctive relief against the Town of Myersville (the "Town"), the Town of Myersville Town Council (the "Town Council"), and Mayor Wayne S. Creadick, Jr. ("Mayor Creadick").[1] Specifically, Dominion seeks a declaration that the Town's local laws and zoning code are preempted by the Natural Gas Act, 15 U.S.C. § 717 et seq., (the "NGA") and an injunction to prevent the application of those laws to its plan to construct a natural gas compressor station (the "Compressor Station") in the Town. Dominion has filed a Motion for Summary Judgment to that effect (ECF No. 17), and the issues were fully briefed by both parties. The Court has reviewed the parties' submissions and held a hearing on September 26, 2013, pursuant to Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiff Dominion Transmission, Inc.'s Motion for Summary Judgment (ECF No. 17) is GRANTED IN PART and DENIED IN PART, specifically, those local laws that affect the siting and operation of the

---

[1] The Court refers to all three defendants in this case collectively as "Defendants."

Compressor Station are null and void, and summary judgment is GRANTED, but injunctive relief is DENIED.

BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The Plaintiff, Dominion Transmission, Inc., owns land located in the Town of Myersville, Maryland and seeks to construct and operate a natural gas compressor station on that property. Defs.' Opp'n Memo., ECF No. 24-1, at 2. The Compressor Station would service an interstate pipeline and is part of a larger, multi-state project. The property on which Dominion seeks to construct its Compressor Station is zoned "General Commercial" under the Town's zoning laws; however, the property has been super-imposed with an "Highway Employment Overlay District," which requires, *inter alia*, the submission of an overlay district master plan. The purpose of this master plan is to present "assurances that the development within the overlay zoning district will include the public facilities, amenities and other design features needed to support the greater density and design flexibility over and above that which would be required of the underlying zoning district." *Id.* A party seeking to amend the master plan must submit the amendment to the Town for review and approval. *Id.* at 3.

In order to construct its Compressor Station, Dominion sought a number of permits and approvals. Specifically, Dominion sought (1) a Certificate of Public Convenience and Necessity from the Federal Energy Regulatory Commission ("FERC");[2] (2) an amendment to the overlay

---

[2] The Natural Gas Act requires that a company apply to FERC for a Certificate of Public Convenience and Necessity before it may begin construction of a facility that transports natural gas. 15 U.S.C. § 717f(c). The Certificate of Public Convenience and Necessity is only granted if the company is willing and able to complete the project, and the facility is required by present or future public convenience and necessity. *Id.* at § 717f(e).

district master plan for the Compressor Station site from the Town Council; and (3) an air quality permit from Maryland Department of the Environment ("MDE").

**Federal Energy Regulatory Commission Certification Process**

On February 17, 2012, Dominion applied to the Federal Energy Regulatory Commission ("FERC") for a Certificate of Public Convenience and Necessity. FERC ultimately approved the application on December 20, 2012, but the approval was subject to a variety of environmental compliance conditions and required Dominion to file documentation that it had "received all applicable authorizations required under federal law." Pl.'s Compl. Ex C App'x B ¶ 8, ECF No. 1-4 (hereinafter, "FERC Certification"). The Maryland Department of the Environment also retained authority to grant or deny air quality permits. *Id.* at ¶ 71. In addition, FERC's order expressly states:

> Any state or local permits issued with respect to the jurisdictional facilities authorized herein must be consistent with the conditions of this certificate. The Commission encourages cooperation between interstate pipelines and local authorities. However, this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction or operation of facilities approved by this Commission.

*Id.* at Order, ¶ F. Finally, FERC made several express findings, including that (1) the Myersville site was the most appropriate site of the nine sites considered, *id.* at ¶ 64; (2) the Compressor Station would not have significant visual or audible effects on the surrounding areas, *id.* at ¶¶ 100, 118; and (3) that the Compressor Station was required by public convenience and necessity, *id.* at ¶ 66.

Thereafter, on January 22, 2013, the Town and the Myersville Citizens for Rural Community, Inc.[3] filed for rehearing and reconsideration of the Certification. FERC denied the request on May 16, 2013.

**Town Zoning Amendment Application Process**

On April 5, 2012—during the pendency of the FERC proceedings—Dominion requested that the Town approve an amendment to master plan for the Compressor Station site. The Town applied its normal zoning procedures—public hearings were held, evidence taken, and ultimately, Dominion's application was denied on August 27, 2012. Defs.' Opp'n Memo., at 3. The grounds for the denial were based on the Town's zoning code and local laws and specifically included: (1) the amendment's inconsistency with the Town Comprehensive Plan; (2) the amendment's inconsistency with the High Employment Overlay District requirements; (3) the hazard to public health and safety posed by the proposed use; (4) the nuisance caused by the noise generated from the proposed use; and (5) the failure to comply with the permitted uses in a High Employment Overlay District. *See id.*; Pl.'s Compl. Ex B, ECF No. 1-3. No appeal was taken from the Town's decision.

**Maryland Department of the Environment Air Quality Permit Application Process**

Dominion initially filed for an air quality permit on February 1, 2012. This initial application was denied in June 2012 on the basis that Dominion had not submitted sufficient documentation to demonstrate compliance with local zoning laws as required by § 2-404 of the Environmental Article of the Maryland Code.[4] Defs.' Opp'n Memo., at 4. After FERC

---

[3] Myersville Citizens for Rural Community, Inc. ("MCRC") is an organization of concerned Myersville residents who oppose the construction of the Compressor Station. At the September 26, 2013 hearing held before this Court, MCRC's Motion for Leave to Intervene (ECF No. 15) was granted. *See* Order, 9/26/2013, ECF No. 35.

[4] As explained *infra*, § 2-404 requires that an air quality permit applicant submit documentation of its compliance with "applicable" local zoning and land use laws.

approved the Certificate of Public Convenience and Necessity, Dominion reapplied for an air quality permit with MDE. At this time, Dominion argued that its application should be processed because it was not required to comply with any local zoning laws because those laws were preempted by federal law, specifically the Natural Gas Act, 15 U.S.C § 717 et seq. Pl.'s Reply, ECF No. 28, at 2. Nevertheless, MDE again refused to process Dominion's application.

**Review in the United States Court of Appeals for the District of Columbia Circuit**

Having been rebuffed in its attempts to obtain an air quality permit, Dominion filed a Petition for Review in the D.C. Circuit on February 1, 2013.[5] There, Dominion argued that § 2-404(b)(1) was not part of Maryland's State Implementation Plan ("SIP") and, in the alternative, that Dominion had complied with § 2-404 because the local zoning and land use laws were preempted and therefore inapplicable to it. Pl.'s Reply, at 3.

In its July 19, 2013 opinion, the D.C. Circuit found that § 2-404(b)(1) was part of Maryland's State Implementation Plan ("SIP"). *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 24 (D.C. Cir. 2013). Thus, because a SIP is required by the Clean Air Act, the D.C. Circuit concluded that § 2-404(b)(1) is not preempted by the NGA. *Id.* Nevertheless, the D.C. Circuit granted Dominion's Petition for Review and ordered the Maryland Department of the Environment to process Dominion's air quality permit application. Thus, MDE was required to determine whether Dominion had complied with the "applicable" local zoning and land use laws, which, in turn, required MDE to decide whether the Town's local zoning and land use laws had been preempted by the Natural Gas Act. *Id.* at 253. Because MDE is the agency in charge of administrating Maryland's air quality permits, the D.C. Circuit (and FERC, as the D.C. Circuit

---

[5] The Natural Gas Act provides for original and exclusive jurisdiction in the United States Court of Appeals for the District of Columbia Circuit when a company alleges that a state administrative agency, acting pursuant to federal law, fails to act with respect to the issuance, conditioning, or denial of "any permit required under federal law for a facility subject to [the Natural Gas Act]." 15 U.S.C. § 717r(d)(2). The court premised its jurisdiction on MDE's refusal to process Dominion's application (rather than simply issuing, conditioning, or denying it).

5

points out) found that it was appropriate for MDE to first determine which local laws were preempted.[6] *Id.*

On August 8, 2013, the D.C. Circuit issued an order setting forth the schedule for the remanded proceedings. Under that schedule, MDE must make a final determination and/or issue a final permit by June 9, 2014. Defs.' Hr'g Ex. 2.

**On Remand to Maryland Department of the Environment**

On August 13, 2013, MDE sent a letter to Dominion stating that it was processing Dominion's application and no further information was needed from Dominion at that time. MDE Letter, ECF No. 32-2, at 1. The letter also noted that Dominion had submitted site plans to the Town showing the Compressor's compliance with the Town's zoning laws and, therefore, Dominion had complied with § 2-404. *Id.*

**Dominion's Requested Relief from This Court**

Dominion filed for declaratory relief in this court on January 1, 2013—the day before Dominion filed its Petition for Review in the D.C. Circuit. Dominion ultimately filed a Motion for Summary Judgment (ECF No. 17) and specifically requested the following relief:

- A declaration that the Town Code, and all ordinances, rules, and regulations contained therein, are preempted by the Natural Gas Act as a matter of law and are thus null and void as applied to the siting, construction, and operation of the Myersville Compressor;

- A declaration that Dominion is not required to secure any amendments, approvals, reviews, or other actions required by the Town of Myersville Code in order to proceed with construction on the Compressor;

---

[6] Of course, MDE's ultimate determination on the preemption issue would be subject to further appeal in the D.C. Circuit.

6

- Permanent injunctive relief enjoining Defendants from implementing and enforcing the Town Code, and all ordinances, rules, and regulations contained therein, against Dominion's plan to construct the Myersville Compressor; and
- A request for the Court to maintain jurisdiction over the matter to address any future actions by Defendants inconsistent with its other orders.

This Court held a hearing on Dominion's Motion on September 26, 2013.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Moreover, when a case presents a pure question of law as to federal preemption, the case should be resolved at the summary judgment stage. *Nat'l City Bank of Indiana v. Turnbaugh*, 367 F. Supp. 2d 805, 811 (D. Md. 2005), *aff'd*, 463 F.3d 325, 329 (4th Cir. 2006).

## ANALYSIS

Dominion seeks a declaratory judgment and injunctive relief from further enforcement of the Town's zoning and land use laws, arguing that those laws are preempted by the Natural Gas Act, 15 U.S.C. § 717 et seq. Defendants contest the extent of the NGA's preemptive power and

argue that the scope of Dominion's requested relief is excessive. Ultimately, this Court recognizes the broad preemptive effect of the NGA, but limits Dominion's remedy in this Court so as to afford the Maryland Department of the Environment the opportunity to address compliance with the Clean Air Act ("CAA").

**I.      Preemption and the Natural Gas Act.**

Under the Supremacy Clause of the U.S. Constitution, federal law is the "supreme Law of the Land." U.S. Const. art. IV, cl. 2. Thus, any conflicting state or local law is preempted and, therefore, "without effect." *Washington Gas Light Co. v. Prince George's County Council*, 711 F.3d 412, 419 (4th Cir. 2013) (citations omitted). There are three general theories under which federal law may preempt state and local laws. The most basic form is express preemption, which arises when Congress expressly indicates its intent to preempt state and local laws in the federal statute itself. Beyond those clear-cut cases, however, preemption may also be implied in two discrete situations. One type, known as "conflict preemption," arises when the federal and state laws conflict; the other form—"field preemption"—occurs where Congress intends to occupy a legislative field. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747-48 (1985). Regardless of the theory of preemption, Congress' purpose is the "ultimate touchstone" of the analysis. *Washington Gas Light*, 711 F.3d at 419 (citation omitted).

Turning to the matter at hand, this Court first notes that the preemptive effect of the Natural Gas Act is well established. As the United States Court of Appeals for the District of Columbia Circuit recently recognized in a related case in this matter, "Congress intended to occupy the field to the exclusion of state law by establishing through the NGA a comprehensive scheme of federal regulation of all wholesales of natural gas in interstate commerce." *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 243 (D.C. Cir. 2013) (internal quotation marks

omitted). In fact, the field of the NGA's preemptive power was extended to the construction and siting of natural gas facilities by a 2005 amendment. *See* § 717b(e)(1) ("The Commission shall have the exclusive authority to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal."); *see also AES Sparrows Point LNG, LLC v. Smith*, 527 F.3d 120, 125-26 (4th Cir. 2008) ("[T]his grant of exclusive authority to FERC leaves state and local governments with no residual power to site LNG terminals or to take actions that would effectively approve or deny such siting. Accordingly, unless a state law prohibiting the siting of LNG terminals is exempted from § 717b(e)(1)'s preemptive effect by some other provision of federal law, it is unenforceable under the Supremacy Clause." (citations omitted)).

The preemptive power of the NGA is limited, however, by three statutory exceptions; specifically, § 717b(d) states that the Act does not "affect[] the rights of states under (1) the Coastal Zone Management Act of 1972 (16 U.S.C. § 1451 et seq.); (2) the Clean Air Act (42 U.S.C. § 7401 et seq.); or (3) the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.)."[7] 15 U.S.C. § 717b(d); *see also AES Sparrows Point LNG*, 527 F.3d at 123 (recognizing three exceptions to broad preemptive power of NGA). Thus, state and local regulations passed and validly enacted pursuant to one of these reserved powers are not preempted; otherwise, however, the NGA and the federal regulations promulgated pursuant to that Act occupy the field with respect to siting, construction, or operation of natural gas facilities like Dominion's Compressor Station.[8]

---

[7] For ease of reference, the Court will refer to the Coastal Zone Management Act of 1972 as the "CZMA." The Federal Water Pollution Control Act, commonly known as the "Clean Water Act," will be referenced by its usual acronym of "CWA."

[8] The parties correctly assume that the Compressor Station is subject to the NGA and FERC's exclusive jurisdiction. Section 717(b) defines the scope of the NGA:
>The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale

9

Here, Defendants contend that its local zoning and land use laws are saved by § 2-404(b) of the Environment Article of the Maryland Code, which provides that air permits under the Clean Air Act will not issue unless the applicant submits documentation that it is in compliance with local zoning and land use requirements.[9] In Defendants' view, Maryland has exercised its statutory right to establish a permitting program under the Clean Air Act ("CAA") that incorporates more stringent requirements than those mandated under federal law, and because of this choice, the Town's local regulations are not preempted.

In resolving the related case of *Dominion Transmission, Inc. v. Summers*, the D.C. Circuit addressed essentially these same legal issues. There, the D.C. Circuit determined that § 2-404(b) was in fact part of Maryland's State Implementation Plan ("SIP"), *Dominion Transmission*, 723 F.3d at 243-44, but that local laws conflicting with FERC's Certificate or causing delay to the construction or operation of the facility would be preempted. *Id.* at 245. Moreover, the D.C. Circuit indicated that the preemption analysis must be performed first; in other words, an air quality permit could only be denied under § 2-404(b) if the applicant failed to comply with a

---

for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, and to the importation or exportation of natural gas in foreign commerce and to persons engaged in such importation or exportation, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.

15 U.S.C. § 717(b). Here, Dominion is engaged in the transportation of natural gas in interstate commerce, as the Compressor is one piece of a multi-state pipeline and storage project. 141 FERC 61,240, at ¶¶ 1, 15.

[9] Specifically, the full § 2-404(b) reads:
> (b)(1) Before accepting an application for a permit subject to subsection (c) of this section, the Department shall require the applicant to submit documentation:
>   (i) That demonstrates that the proposal has been approved by the local jurisdiction for all zoning and land use requirements; or
>   (ii) That the source meets all applicable zoning and land use requirements.
> (2) Paragraph (1) of this subsection does not apply to any application for a permit to construct at an existing source unless the existing source is a nonconforming use.

Md. Code, Envir. § 2-404(b).

local zoning or land use law that was not preempted and, therefore, applicable. *Id.* Despite the centrality of the preemption question to that case, however, the D.C. Circuit declined to make any specific legal rulings itself; instead, the D.C. Circuit remanded the case to MDE, stating that the agency was "better situated" to determine Dominion's compliance with § 2-404. *Id.* Because the D.C. Circuit recognized that a determination of compliance with § 2-404 requires MDE to also decide which Myersville zoning and land use laws are "applicable," the court also permitted MDE to make the initial determination of the preemption question. *Id.*

Because of the pending proceedings before MDE, this Court will not seek to decide that question, which will still be subject to review by the D.C. Circuit. Due to the fact that construction at the Compressor site cannot proceed until MDE issues an air quality permit, there is no danger of prejudice to Dominion's interests.

The relief requested by Dominion in this proceeding, however, requires the Court to address preemption issues beyond the scope of those before MDE. Specifically, Dominion seeks a declaration that *all* of the Town Code is preempted rather than just the *zoning and land use* provisions. The Defendants argue that this requested relief is too broad. Nevertheless, the Town has not been able to identify any law or regulation outside the scope of the field of preemption. Those provisions the Town has identified—specifically, those relating to stormwater management and soil erosion, *see* Defs' Resp. to Pl.'s Supp. Memo, ECF No. 31, at 3—are within the preempted field. *See, e.g., Northern Nat. Gas Co. v. Munns,* 254 F. Supp. 2d 1103, 1111 (S.D. Iowa 2003) (finding that state soil erosion standards are within the field of preemption). More importantly, these issues were already considered by FERC. Specifically, the Certificate addresses a variety of water, soil, and erosion issues, including groundwater impacts, FERC Certification, at ¶ 133, stabilization and reseeding of the construction area, *id.* at

¶ 142, and conditions under which "monitoring of sediment transport" may be required, *id.* at ¶ 136. *See id.* at 1109-10 (finding field preemption due to extensive federal regulation over area in which state law purported to regulate as well).

Furthermore, the Town has not argued that those stormwater and soil erosion provisions—nor any other law contained in the Town Code for that matter—remain applicable pursuant to the NGA's preemption exemptions for the Coastal Zone Management Act or the Clean Water Act. As such, the Town has failed to demonstrate that its laws are protected from preemption by one of the NGA's statutory preemption exceptions. Accordingly, this Court will issue a declaratory judgment to the effect that those portions of the Town Code directly affecting the siting, construction, or operation of the Myersville Compressor are null and void as applied to Dominion except for those laws or regulations enacted pursuant to the State's rights under the Coastal Zone Management Act of 1972 (16 U.S.C. § 1451 et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.), or the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.).[10] *Cf.*

---

[10] At the hearing held on September 26, 2013, Defendants' counsel suggested that the requested declaratory relief was too broad because the NGA only preempts local laws to the extent that they interfered with federal law. This position misstates the grounds for preemption under the NGA because, as stated repeatedly by those courts that have addressed the issue, the NGA occupies the field with respect to the siting, construction, and operation of a natural gas facility. *See Dominion Transmission*, 723 F.3d at 244 ("FERC's certificate preempts all local requirements that regulate in the same field as the NGA . . . ."); *AES Sparrows Point LNG*, 527 F.3d at 127 (recognizing that local law, although addressing coastal management, was nevertheless preempted by the NGA because the NGA entrusts FERC with exclusive authority over siting, construction, expansion, or operation of a natural gas facility and because the local law was not approved by NOAA pursuant to the procedures prescribed by the CZMA); *Nat'l Fuel Gas Supply Co v. Pub. Serv. Comm'n*, 894 F.2d 571, 577 (2d Cir. 1990) (finding it "apparent" that "Congress has occupied the field of regulation regarding interstate gas transmission" and concluding that a state statute requiring site-specific environmental review was preempted); *Northern Nat. Gas Co. v. Munns*, 254 F. Supp. 2d 1103, 1111 (S.D. Iowa 2003) (finding NGA occupies field and therefore preempts local soil regulations); *Algonquin LNG v. Loqa*, 79 F. Supp. 2d 49, 52 (D.R.I. 2000) ("In short, Congress clearly has manifested an intent to occupy the field and has preempted local zoning ordinances and building codes to the extent that they purport to regulate matters addressed by federal law.").

This Court recognizes that some local regulations may cover subjects beyond the field occupied by the NGA. *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 308 (1988) ("Of course, every state statute that has some indirect effect on rates and facilities of natural gas companies is not pre-empted."); *Algonquin LNG*, 79 F. Supp. 2d at 52-53 ("Finally, it should be noted that interstate gas facilities are not entirely insulated from local regulation. State and local laws that have only an indirect effect on interstate gas facilities are not preempted. Moreover, local regulation with respect to matters or activities that are separate and distinct from subjects of federal regulation may be permissible if they do not impede or prevent the accomplishment of a legitimate federal

*Algonquin LNG v. Loqa*, 79 F. Supp. 2d 49, 53 (D.R.I. 2000) ("It is hereby declared that any provisions of the Providence Zoning Ordinance, any building or other codes administered by the City of Providence, and any licensing or certification requirements that are contingent upon approval pursuant to them are preempted insofar as they purport to apply to the FERC-approved modifications to Algonquin's natural gas facility.").[11]

## II. Injunctive Relief.

In addition to declaratory judgment, Dominion requests that this Court enter a permanent injunction barring Defendants from "implementing or enforcing the Town Code, and *all* ordinances, rules, and regulations contained therein, against Dominion's plan to construct the Myersville Compressor." Pl.'s Memo Mot. Sum. Judg. at 11 (emphasis added). The guidelines for granting a permanent injunction are well-established:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The determination whether to grant or deny an injunction is left to the sound discretion of the trial court. *Id.*

---

objective.").
        This case, however, does not present such an issue, and the Town has not identified any specific regulations that would have only an indirect effect on the construction or operation of the facility.

[11] The Fourth Circuit addressed *Algonquin LNG* in its recent *Washington Gas Light Co.* opinion. While the Fourth Circuit ultimately concluded that *Algonquin LNG* was not dispositive on the matter before it, the court distinguished the case on the facts rather than challenging ithe legal conclusions:
> Algonquin is distinguishable, however, because the facility at issue there was an interstate facility and, therefore, both the NGA and the PSA applied. Because Washington Gas is a local distribution pipeline under the NGA, the "comprehensive scheme" of federal regulation on which the Algonquin court relied is inapplicable. Given that Algonquin's preemption holding rested entirely on the existence of this "comprehensive scheme" of regulation, that case has no persuasive value here.

*Washington Gas Light Co.*, 711 F.3d at 426.

Here, Dominion's request fails on the first requirement—there has been no showing of irreparable injury at this time. Dominion alleges in its Complaint (ECF No. 1) that it "will suffer irreparable harm in that it will not be able to construct the Myersville Compressor Station." Pl.'s Compl. ¶ 38. In its Reply brief, Dominion further asserts that it is at risk of "further denials and delays imposed by Defendants" and complains that it will unnecessarily be required to "submit sketch plats, site improvement plans, and final plats" to the Town. Pl.'s Reply, at 10.

These various assertions fail to support a finding of irreparable harm. As stated in MDE's August 13, 2013 letter, Dominion has already submitted site plans to the Town. *See* MDE Letter, ECF No. 32-2, at 1. More importantly, as Plaintiff's Counsel acknowledged at the September 26th hearing, Dominion cannot proceed with construction on the Compressor Station until MDE issues an air quality permit. *See* Defs.' Hr'g Ex. B. Considering that Dominion cannot yet proceed with construction of the Compressor Station, there is currently no threat of imminent harm to Dominion and, therefore, no reason for this Court to issue a permanent injunction.

### III. Continued Jurisdiction of This Court.

In addition to declaratory and injunctive relief, Dominion requests that this Court "maintain jurisdiction over the matter to address any future actions by Defendants inconsistent with its other orders." While this Court has found that an injunction would be inappropriate under these circumstances, there are grounds to maintain jurisdiction over this action. Specifically, the Maryland Department of the Environment is still reviewing the preemptive effect of the NGA in connection with its application of the Clean Air Act; moreover, that determination is subject to appeal to the D.C. Circuit. Accordingly, it may be appropriate for this Court to review this judgment at some later time. In addition, it may be necessary for this Court

to enforce its declaratory judgment at some point in the future—a power reserved to this Court in order to effectuate its decrees. *See U.S.I. Properties Corp. v. M.D. Construction Co.*, 230 F.3d 489, 496 (1st Cir. 2000) ("Federal courts have the ancillary enforcement jurisdiction necessary to enable a court to function successfully, that is, to manage its proceedings, vindicates its authority, and effectuate its decrees." (internal quotation marks omitted)).

Notably, in *Colorado Interstate Gas Co. v. Wright*, 707 F. Supp. 2d 1169, 1190 (D. Kan. 2010), the U.S. District Court for the District of Kansas resolved an NGA preemption matter in a very similar fashion. There, after finding that state laws regulating the storage of natural gas were preempted by the NGA and the Pipeline Safety Act (49 U.S.C. § 60101 et seq.), the Court denied injunctive relief but retained jurisdiction over the matter:

> The court will grant th[e] declaratory relief sought in the plaintiff's complaint and advocated in the plaintiff's summary judgment pleadings. Because the plaintiff's brief fails to address and establish the present need for injunctive relief, the court will not grant the same at this time, but the plaintiff will be permitted to renew this request should declaratory relief later prove to be an inadequate remedy.

*Id.* This Court finds that a similar course of action allows for the most flexibility and expediency in resolving this matter. Accordingly, this case will remain open.

## CONCLUSION

For the reasons stated above, Plaintiff Dominion Transmission, Inc.'s Motion for Summary Judgment (ECF No. 17) is GRANTED IN PART and DENIED IN PART. Specifically, Dominion Transmission, Inc.'s request for declaratory relief is GRANTED, and this Court hereby declares that those portions of the Myersville Town Code of Ordinances that directly affect the siting, construction, or operation of the Myersville Compressor are null and void as applied to Dominion except for those laws or regulations, if any, enacted pursuant to the

15

State's rights under the Coastal Zone Management Act of 1972 (16 U.S.C. § 1451 et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.), or the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.). This declaration, however, does not extend to those preemption questions related to Myersville Town Code of Ordinances provisions dealing with zoning and land use, which are currently pending before the Maryland Department of Environment. Dominion Transmission, Inc.'s request for injunctive relief, however, is DENIED.

      A separate Order follows.

October 7th, 2013                                                     /s/_____
                                                                                     Richard D. Bennett
                                                                                     United States District Judge